UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 18-145-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5: 22-061-DCR |
| V. ) | |
| ) | |
| SHANNON D. HIXON, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

*** *** *** ***

Defendant Shannon Hixon filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He contends that his attorney was ineffective for failing to adequately consult with him about the benefits of testifying in his own defense and for not presenting his testimony where such would be sufficiently outcome determinative to undermine confidence in the verdict. [Record No. 123] Hixon's motion will be denied because he has not demonstrated that his counsel was deficient.

I.

Kyle Farvour, a former military veteran and addict, was living at a residential rehab facility in April 2017. On April 12th, Farvour was contacted by his supplier, Harvey Isaac, about receiving "really, really good heroin" from his source, Shannon Hixon. Later that day, Hixon drove Isaac to the rehab facility to meet with Farvour. Isaac provided Farvour with an illicit substance and a new syringe for $80.00. Farvour was later discovered his bathroom collapsed over the sink and without a pulse. Law enforcement found on the sink drug

paraphernalia which tested positive for fentanyl. A toxicology report later indicated that Farvour had a fentanyl blood concentration almost twice a therapeutic (i.e., "safe") dose.

Hixon was indicted for conspiracy to distribute oxycodone and a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for distributing fentanyl resulting in death, in violation of 21 U.S.C. § 841(b)(1)(C). [Record No. 1] Hixon elected to proceed with a jury trial.

During trial, lower-level dealers (including Isaac) testified against Hixon. Hixon chose not to testify, and the Court affirmed on the record that this decision was solely Hixon's. [Record No. 111, pp. 151-52] The jury convicted Hixon on both counts. [Record No. 72] Hixon was sentenced to life imprisonment for the count charging distribution resulting in Farvour's death and 240 months of imprisonment on the conspiracy count. [Record No. 93]

Hixon appealed but the United States Court of Appeals for the Sixth Circuit affirmed his conviction and sentence. [Record No. 119] On appeal, Hixon initially argued that the evidence did not support his conviction under § 841(b)(1)(C) for distribution of fentanyl resulting in death. However, as the Sixth Circuit noted, "the government presented cell phone evidence suggesting that only Hixon could realistically have been Farvour's source that day" for the fentanyl in his system and a rational jury could find that Hixon's distribution of fentanyl was knowing or intentional. [*Id*. at 3.] And the court concluded that the evidence presented during trial was sufficient to conclude that the fentanyl was Farvour's cause of death. [*Id*. at 4.] Finally, the Sixth Circuit determined that this Court did not abuse its discretion by imposing a life sentence. Thereafter, Hixon filed an unsuccessful petition for a writ of certiorari from the United States Supreme Court. [Record Nos. 121, 122]

After exhausting direct appeals, Hixon filed the current motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. As noted above, he asserts that his trial counsel, Patrick Nash, was ineffective by failing to explain the benefits of testifying in his own defense and by failing to present his testimony which, he claims, would have undermined confidence in the verdict. [Record No. 123] Hixon argues that counsel's instruction that he should not testify constituted "an unreasonable assessment of the prosecution's ability to effectively cross-examine" him. Additionally, Hixon asserts that the evidence against him was "far from overwhelming" and that his proposed testimony that he did not sell fentanyl would have raised a reasonable doubt regarding his guilt in the mind of jurors.

The United States argues in its response that Hixon willingly and knowingly chose not to testify and that his counsel was not deficient regarding the advice given in this regard. [Record No. 133] The United States also asserts that Hixon was not prejudiced because his arguments were merely attacks on the sufficiency of the evidence, which the Sixth Circuit has already during the defendant's direct appeal.

**II.**

A movant must allege "an error of constitutional magnitude, a sentence imposed outside the statutory limits, or an error of fact or law that was so fundamental as to render the entire proceeding invalid" to prevail on a claim under 28 U.S.C. § 2255. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Miller v. United States,* 562 F. App'x 485, 490 (6th Cir. 2014) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)).

As outlined above, Hixon claims that his counsel was ineffective because he gave him inadequate advice on his right to testify and erred by not allowing him to take the stand.[1] A defendant's right to effective assistance of counsel is violated when defense counsel's performance falls below an objective standard of reasonableness and the defendant is prejudiced by counsel's performance. *Henness v. Bagley,* 766 F.3d 550, 554 (6th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show prejudice, a movant must establish ""that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A defendant has a right to testify on his own behalf, but the right can be waived if the waiver is knowing and voluntary. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987); *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000). "The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *Webber*, 208 F.3d at 551. Additionally, while it is the defendant's

---

[1] Hixon filed an addendum to his memorandum after the government filed its response to his petition. Hixon argued that there were "obvious holes" in the government's position that his counsel failed to properly point out. [Record No. 134] However, this argument constitutes an attack on the sufficiency of the evidence to support his conviction and has been addressed on appeal. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *Dupont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996) (internal citation and quotation marks omitted); *see also Clemons v. United States*, No. 01-496, 2005 U.S. Dist. LEXIS 42452, at *5 (E.D. Tenn. Sept. 30, 2005) (explaining that a movant was barred from relitigating "issues decided adversely to him on direct appeal" under the guise of ineffective assistance of counsel claim in a habeas petition). The Sixth Circuit addressed the sufficiency of the evidence supporting Hixon's conviction on the death results count and determined it was sufficient. Additionally, "a challenge to the sufficiency of the evidence is [generally] not cognizable under § 2255." *Buchanan v. United States*, 191 F.3d 451 (6th Cir. 1999) (table decision) (referencing *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc), *cert. denied*, 396 U.S. 1015 (1970)). Thus, the claims raised in Hixon's addendum will be denied.

ultimate decision regarding whether to testify, "if a tactical decision is made not to have the defendant testify, the defendant's assent is presumed, and if a defendant disagrees with this decision, he must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010) (quoting *Webber*, 208 F.3d at 551) (internal citations omitted).

Hixon admits in his declaration that he discussed the benefits and pitfalls of testifying at trial with his attorney. In his declaration, Hixon explains that his attorney informed him of his right to speak on his own behalf but advised him against it due to concerns that the United States would be able to effectively cross-examine him and undercut the value of his testimony. [Record No. 132, p. 2] Additionally, Hixon states that his attorney informed him that by not testifying, if he was convicted, he would have a better chance of receiving relief from the Sixth Circuit. [*Id.*] Hixon contends that he followed his attorney's advice. But if he had testified, he would have explained that he was not guilty and was being used as a "scapegoat for cooperators." [*Id.*] Thus, at a minimum, Hixon's counsel explained to Hixon his right to testify, and Hixon does not dispute this point.

Following the close of the government's proof during trial, Hixon's attorney requested a recess to discuss with his client whether he wished to testify on his own behalf. [Record No. 111, p. 150] And following the recess provided by the undersigned, attorney Nash stated on the record that Hixon had decided he would not testify. [*Id.* at 151.] The undersigned then confirmed with the defendant that, after conversations with counsel and his knowledge of the case, it was his decision alone not to testify. [*Id.* at 151-52.] Hixon also confirmed that no one had placed any undue pressure on him in making this decision. [*Id.* at 151.] Hixon's statements in response to the Court's inquiry completely undercuts the defendant's argument

that his counsel was ineffective regarding this claim. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (explaining that statements made under oath "carry a strong presumption of verity").

Hixon admits that attorney Nash informed him of his right to testify and then explained why he believed Hixon should not do so, indicating that it was a tactical determination on counsel's part to recommend that Hixon not testify during the trial. Hixon then affirmed that it was his decision alone not to testify. [Record No. 111, pp. 151-52] If Hixon disagreed with counsel's advice, he could have alerted the Court to such disagreement. There is no indication that his counsel was deficient in: (i) informing Hixon of his testimonial right; or (ii) explaining why he advised that Hixon not testify. Ultimately, it was Hixon's decision not to take the stand. Accordingly, Hixon cannot meet the first prong of the *Strickland* analysis and his ineffective assistance of counsel claim is without merit.[2]

### III.

Hixon argues that he is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel because the United States' response is insufficient to allow the Court to deny his claim. [Record No. 138] "Unless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). But a hearing is not required "if the petitioner's allegations cannot be accepted as

---

[2] If the Court concludes that a petitioner cannot meet one prong of the *Strickland* analysis, it is not required to consider the second prong. *Strickland*, 466 U.S. at 697. Because Hixon cannot demonstrate that his counsel was deficient, the undersigned will not address the prejudice prong of the *Strickland* analysis.

true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation marks and citation omitted). The record in this case clearly establishes that Hixon's counsel was not ineffective. Accordingly, his request for an evidentiary hearing will be denied.

### IV.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). When a § 2255 is denied on the merits, the defendant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Reasonable jurists would not find the Court's assessment debatable or wrong because Hixon cannot show that his attorney's performance was deficient. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Shannon Hixon's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 123] is **DENIED**. His claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

2. A Certificate of Appealability will not issue.

3. Hixon's request for an evidentiary hearing is **DENIED**.

- 8 -

Dated: June 7, 2022.

                               Danny C. Reeves, Chief Judge
                               United States District Court
                               Eastern District of Kentucky